*In re* APPLICATION OF COUNTY TREASURER OF STEPHENSON COUNTY.—(D.R.G., INC., Petitioner-Appellant, *v.* EVA BAUCH *et al.,* Respondents-Appellees.) ,

Second District   No. 77-479

Opinion filed February 1, 1979.—Rehearing denied March 22, 1979.

Allan L. Blair, of Chicago, for appellant.

Marshall Patner, of Chicago, and James M. Thorp, of Freeport, for appellees.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Petitioner, D.R.G., Inc., brings this appeal from a trial court order granting the motion of respondent property owners, Eva and Ferd Bauch, to strike and dismiss petitioner's application for a tax deed. A detailed statement of facts and the history of this litigation is set out below in order to present the issues raised by this appeal.

In 1953, Eva Bauch acquired title to certain property which she subdivided as Bauch's Second Addition to the city of Freeport; the instant proceeding concerns Lots 7 and 8 in Block 2 of that subdivision.

On July 1, 1957, the city of Freeport passed an ordinance providing for the construction of sidewalks in the neighborhood that included the property owned by the respondents. Among other things, the ordinance set out where the sidewalk was to be located and the types of materials to be used in the construction thereof. Respondents obtained a copy of the ordinance as they wished to install the sidewalk serving their two lots. The ordinance, due to a technical defect, was repealed on July 15, 1957. Soon thereafter, the city engineer set the stakes for laying the sidewalk; on August 9, 1957, respondents had the sidewalk poured by their own contractor for their two lots. Approximately 20 days later respondents received a notice that a new sidewalk ordinance, almost identical to the

first one, had been passed by the city of Freeport. Later the city sent respondents a notice that the sidewalk they had poured was not properly located and on November 1, 1957, the city sent a contractor to respondent's property who ripped out their sidewalk and installed a new sidewalk two or three feet further from the curb. Under the date of September 16, 1958, respondents received a bill from the contractor who installed the sidewalk for the city; this bill was in the sum of approximately $685. The respondent next heard from the city in 1961 when the city sent a special assessment bill for the sidewalk. Respondents never appeared at any council meetings of the city or in any court with reference to the two ordinances involved with the sidewalk special assessment. Eva Bauch recalls receiving one other notice about the special assessment after 1961, but she did not recall exactly when that was received.

In October of 1957, the respondents conveyed to their two daughters the south 30 feet of Lots 7 and 8 in Block 2; this area included or was adjacent to the sidewalk in question. By a deed dated August 1, 1960, the two daughters of the respondents reconveyed the 30 feet last described to the respondents; however, this deed was not recorded until January 11, 1973. A consideration of $100 in cash was paid by the grantees at the time of each of the aforesaid conveyances. The apparent motive for these conveyances was to lower the assessed value of the premises due to the split ownership.

On October 15, 1973, the respondents' property was sold for $1,058.44 at the annual tax sale conducted by the county collector of Stephenson County for the unpaid sidewalk special assessment described above. The legal description contained in the certificate evidencing the tax sale was as follows:

> "2nd Addition: Lot 7 except 30 feet of Lot 8, Block 2, Bauch's 2nd Addition."

The certificate further stated that the property was assessed to Eva and Ferd Bauch, 1130 W. Stover, Freeport.

On October 2, 1975, petitioner filed a statement with the county clerk extending the period of redemption to March 5, 1976. On October 10, 1975, this proceeding began when petitioner filed a petition for deed. On October 16, 1975, respondents filed an answer denying most of the allegations of the petition for deed and further alleging that petitioner had failed to comply with the provisions of the Illinois Income Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 1—101 *et seq.*). On December 2, 1975, petitioner filed a copy of the notice of the tax sale and proof of service thereof by mail on the respondents at 1130 W. Stover, Freeport, Illinois; this notice stated that the period of redemption had previously been

extended to March 5, 1976, and said notice specified March 10, 1976, as the date for hearing on the petition for a tax deed.

On March 4, 1976, one day prior to the expiration of the period of redemption as extended, respondents filed a motion requesting an additional 30 days from March 10, 1976, in which to make the redemption from the tax sale. On March 10, 1976, petitioner filed its application for a tax deed accompanied by supporting affidavits and exhibits purporting to show compliance with sections 263 and 266 of the Revenue Act of 1939. (Ill. Rev. Stat. 1975, ch. 120, pars. 744 and 747). On March 15, 1976, the court entered an order pursuant to respondent's motion giving them 30 days from March 10, 1976, to make a redemption from the tax sale by paying an amount to be computed by the county clerk of Stephenson County; this order also continued the cause to April 9, 1976, for further hearing.

Instead of redeeming, respondents, on March 16, 1976, filed a motion to dismiss the petition for tax deed and it is the trial court's decision on this motion that is presented by this appeal.

The salient points raised by respondents' motion may be summarized as follows: (1) The tax sale was invalid because the legal description contained in the certificate of sale cannot be located and identified and it is therefore uncertain; (2) that the special assessment as applied to respondents' property is invalid for the following reasons: (a) respondents had constructed a proper sidewalk and the city capriciously ripped it out and installed another; (b) notice of the special assessment was not given to the owners of record, namely, the respondents' daughters; (c) the city did not comply with the special assessment law; and (3) the value of the real estate is greatly in excess of the tax lien being asserted.

On April 5, 1976, pursuant to respondents' motion, the court entered an order directing the county clerk to accept $3,015.32 in redemption from said tax sale within 30 days from March 10, 1976; said amount included $1,050 as petitioner's attorney's fees which were fixed by said court order.

On April 9, 1976, the court held a hearing on respondents' motion to strike and dismiss; Mrs. Bauch was the sole witness for the respondents; she testified as to the ownership of Lots 7 and 8, Block 2 of Bauch's Second Addition; the conveyance and reconveyance of the south 30 feet thereof to and from her daughters for tax purposes (reduction of total assessment); the construction of the sidewalk; its being replaced by the city and she acknowledged receipt of notice of the special assessment from the city in 1961; she also acknowledged receipt of a later notice although she could not remember the exact date it was received. William T. Neiman, a registered land surveyor, testified for the petitioner; he was

shown a description which the parties stipulated was the same as the description appearing in the publication notice of sale for the delinquent special assessment; he stated that he could not accept that legal description for the purpose of making a survey; however, he further testified that from that description and other related recorded instruments he was able to definitely ascertain the exact property involved and he identified it on a subdivision plat as Lots 7 and 8 except the south 30 feet of each of said lots. Shirley Smith, the supervisor of assessments for Stephenson County, also testified for the petitioner; she based her testimony on her examination of various related documents, knowledge of the assessment records and from an examination of the stipulated legal description, and she definitely identified the property purported to be described in the legal description in question as Lots 7 and 8, except the south 30 feet of each of said lots.

On April 9, 1976, following the presentation of the evidence by both parties, petitioner offered to prove compliance with sections 263 and 266 of the Revenue Act. The trial court indicated that it preferred to rule on the motion to strike and dismiss before hearing such evidence. On January 17, 1977, the court, on petitioner's motion, entered an order tolling until further order of court, the time limit within which a tax deed could be secured and recorded. On June 10, 1977, the trial court entered a final order which granted respondents' motion to strike and dismiss petitioner's application for deed and further the order found that petitioner had failed to comply with the requirements of sections 263 and 266 of the Revenue Act.

The first issue to be resolved on this appeal is whether respondents may collaterally attack the confirmation of the special assessment proceedings of the city and the judgment and tax sale held by the county collector in October 1973, at which petitioner acquired its tax sale certificate on respondents' property.

Section 270 of the Revenue Act (Ill. Rev. Stat. 1975, ch. 120, par. 751) provides, *inter alia*:

"* * * Any judgment for the sale of real estate for delinquent taxes, except as otherwise provided in this Section, shall estop all parties from raising any objections thereto, or to a tax title based thereon, which existed at or before the rendition of such judgment or decree, and could have been presented as a defense to the application for such judgment in the court wherein the same was rendered, and as to all such questions, the judgment itself is conclusive evidence of its regularity and validity in all collateral proceedings, except in cases where the tax or special assessments have been paid or the real estate was exempt from general taxes under this Act or was not subject to special assessment. * * *"

Respondents here do not allege the subject property was exempt from general taxes or that it was not subject to the special assessment in question.

In *Young v. Madden* (1960), 20 Ill. 2d 506, 170 N.E.2d 551, our supreme court discussed the nature of the proceeding for a tax deed under section 266 of the Revenue Act. The court concluded that the statute contemplated a summary judicial determination of compliance with the statute; that objections that would be proper in the original proceedings for judgment and sale for taxes are not proper in these proceedings; and that the sole issue for the court in this proceeding is whether the statutory conditions subsequent to the tax sale have been performed. Likewise, in *First Lien Co. v. Markle* (1964), 31 Ill. 2d 431, 202 N.E.2d 26, the court, relying on *Young v. Madden* and section 270 of the Revenue Act, held that a judgment and order of sale was conclusive as to defendant's objections to an erroneous assessment which clearly existed prior to the rendition of the judgment and could have been presented to the court as a defense at the time of the application for judgment and sale for assessments.

Subsequently, in the case of *Nix v. Smith* (1965), 32 Ill. 2d 465, 207 N.E.2d 460, the court discussed both *Young v. Madden* and *First Lien Co. v. Markle*, pointing out that in neither of those cases did the issue to be resolved relate in any way to jurisdictional matters. The court went on to state that while section 266 is primarily concerned with compliance with the statutory obligations imposed upon a purchaser if he is to receive a tax deed, this does not mean that jurisdictional objections are precluded; it is axiomatic that jurisdictional objections may be raised at any time and the fact that the statute does not specifically mention them does not indicate an intention to bar them. Further, in *In re Application of County Collector* (1977), 48 Ill. App. 3d 572, 362 N.E.2d 1335, the court was also of the opinion that section 266 of the Revenue Act does not preclude any form of collateral attack on a tax deed order rendered without jurisdiction over the property. Quoting from *Shapiro v. Hruby* (1961), 21 Ill. 2d 353, 358, 172 N.E.2d 775, the court stated,

> "By its enactment of section 266 of the Revenue Act (Ill. Rev. Stat. 1959, chap. 120, par. 747,) the legislature intended to render tax titles incontestable except by direct attack, unless the circumstances are such as to warrant the application of section 72 of the Civil Practice Act, (Ill. Rev. Stat. 1959, chap. 110, par. 72,) *or unless the order directing the issuance of deed was utterly void.* * * *" (48 Ill. App. 3d 572, 584-85, 362 N.E.2d 1335, 1344),

and quoting from the language in *Urban v. Lois, Inc.* (1963), 29 Ill. 2d 542, 546, 194 N.E.2d 294, the court also stated,

> " '* * * We think it clear that the entire tax-sale proceeding is one

*in rem* rather than in *personam.* \* \* \* It is the jurisdiction over the land itself, acquired in the original application for judgment and order of sale that gives to the county court the power to act. \* \* \* Once acquired the county court retains jurisdiction to make all necessary findings and enter all necessary orders supplemental to the original tax sale. \* \* \*' " 48 Ill. App. 3d 572, 586, 362 N.E.2d 1335, 1345.

■■ ■ On the basis of the above authorities we conclude that collateral attacks on tax deed proceedings are limited for the most part to the two situations described in the exceptions contained in section 270 of the Revenue Act and to a tax deed order alleged to have been entered by a court without jurisdiction over the property. In *Wooded Shores Property Owners Association, Inc. v. Mathews* (1976), 37 Ill. App. 3d 334, 345 N.E.2d 186, this court held that an amended complaint which specifically alleged that the legal description in the orders for tax sale and deed were uncertain and indefinite properly stated a cause of action to collaterally attack a tax deed. Since one of the grounds of the respondents' motion is based upon the uncertainty of the legal description contained in the tax sale certificate, this contention has been properly raised in this proceeding and therefore is a proper basis for collateral attack.

■■ Any description by which the property might be identified by a competent surveyor with reasonable certainty, either with or without the aid of extrinsic evidence is sufficient. (*Smiley v. Fries* (1882), 104 Ill. 416, 419.) In dealing with descriptions specifically for taxation purposes, our supreme court has stated:

"\* \* \* A description for the purposes of taxation is to be construed with reference to the well known custom of describing property for purposes of taxation with respect to letters, characters and abbreviations permitted by statute. \* \* \* Any description by which the property may be identified by a competent surveyor with reasonable certainty, either with or without the aid of extrinsic evidence, is good. \* \* \* The rule may be less stringent as to a description of property for taxation than in a grant or conveyance intended to pass title absolutely. \* \* \* A description will be held sufficient which can be rendered certain by oral proof without enlarging or varying the terms but which simply explains whatever ambiguity there may be in the terms actually used. \* \* \*" *People ex rel. Brittain v. Outwater* (1935), 360 Ill. 621, 625, 196 N.E. 835, 837.

In the case before us, Neiman, whose qualifications were unchallenged by respondents, unequivocally testified that he was able to definitely identify the exact property involved with the aid of other

extrinsic evidence; to the same effect was the testimony of Shirley Smith, the county supervisor of assessments. On the other hand, respondents failed to introduce any evidence to show that the description contained in the certificate of sale was meaningless and incapable of identifying a parcel of real estate.

Respondents contend that the cases following *Smiley v. Fries* and relied on here by petitioner, namely, *Mason v. Merrill* (1889), 129 Ill. 503, 21 N.E. 799; *Village of Itasca v. Schroeder* (1899), 182 Ill. 192, 55 N.E. 50; *Southern Illinois National Bank v. Thaxton* (1922), 224 Ill. App. 554, apply *Smiley v. Fries* only to cases including monuments within disputed documents. A review of those cases however, do not support such a limitation of *Smiley v. Fries.* Respondents further argue that the above rule cannot apply where the description remaining is inherently inconsistent, and a description not identifiable, voids a tax judgment. (*Vennum v. People ex rel. Galloway* (1900), 188 Ill. 158, 58 N.E. 979.) Further they contend that the question of the adequacy of the description is for the trial court; while the surveyor may find the property, what is meant by the description is to be determined by the court from the construction of the language used. *Town of Cicero v. Chicago, Burlington & Quincy R.R. Co.* (1915), 270 Ill. 606, 110 N.E. 811.

■ While the above are correct statements of the law, and while the decision of the trial court should not be lightly disturbed (see *Village of Itasca v. Schroeder*), given the clear and convincing testimony of Neiman, supported by that of Shirley Smith and the absence of contrary evidence, we are of the opinion that the trial court's decision regarding the inadequacy and uncertainty of the description of the subject property is against the manifest weight of the evidence.

Next, we consider whether the conduct of the city in tearing out respondents' sidewalk and installing a new one constitutes such arbitrary and capricious action that the special assessment is thereby invalidated.

■ It is readily apparent that this point could have been asserted in the special assessment proceedings required by law at the time it was confirmed. Respondents are estopped from raising this point at this time by reason of the provisions of section 270 of the Revenue Act quoted above. However, assuming for the purpose of argument only, that section 270 does not dispose of this argument we do not find that the conduct of the city was arbitrary and capricious. Both the original ordinance of July 1, 1957, which was repealed on July 15, 1957, and the replacement ordinance of August 19, 1957, called for the location of the sidewalks to be designated by the city engineer. Mrs. Bauch testified that the city engineer did come out and set the stake for their sidewalk, approximately 4 to 4½ ft. from the curb; the sidewalk was poured on August 9, 1957. Subsequently,

respondents were notified that the sidewalk was not in the proper location; the city had the sidewalk ripped out and a new one installed, approximately 6 or 7 ft. from the curb.

■■ Examination of the special assessment ordinance reveals that the sidewalk in question was part of a plan for an entire subdivision. While apparently respondents acted in accordance with the original ordinance in locating their sidewalk, prior to the pouring of that sidewalk, the ordinance was repealed and not replaced until after the respondents had installed the sidewalk; the provisions of the new ordinance might have been quite different, though as noted above, the location provisions were only slightly altered. Taking into consideration as well the importance to the city of conformity of all the sidewalks in the subdivision, we cannot say that the respondents have presented the clear, strong case necessary to justify annulling the action of the city of Freeport, acting within the apparent scope of its authority. *Hawes v. City of Chicago* (1895), 158 Ill. 653, 42 N.E. 373.

We have examined the two cases relied on by respondents, namely, *Hawes v. City of Chicago* and *South Park Commissioners v. Pearce* (1911), 248 Ill. 578, 94 N.E. 33, and find them inapplicable to the case before us. In *Hawes*, the owner had installed a plank sidewalk in conformity with the local ordinance; six months later a new ordinance was passed ordering him to replace the wooden sidewalk with a cement one at the same location; the ordinance there was declared void. In the case before us the location of respondents' sidewalk was not in conformity with the plan for the rest of the subdivision. In *South Park Commissioners*, an ordinance which authorized the tearing up of street improvements which were in good condition, to be replaced by substantially similar improvements, was held to be unreasonable. Here, the difference in location does not render the city-installed sidewalk substantially similar to the respondents' sidewalk.

■■ The next issue concerns the question of notice. Respondents' motion states that notice of the special assessment proceedings was not given to the owners of record. On the other hand in their brief respondents state that "failure to include last known assessees in the notice required in the underlying proceedings defeats a tax deed." As to the first point, the lack of proper notice in the special assessment proceedings could have been raised many years prior to the tax sale by the respondents and therefore section 270 of the Revenue Act effectively bars consideration of this contention. As to whether or not proper notice was given by the petitioner of its intention to seek a tax deed, this fact remains to be determined in any hearing that would be held in connection with the application for a tax deed. Since the trial court granted respondents' motion, no hearings were held in respect to compliance with the notice requirements necessary to entitle petitioner to a deed.

Petitioner points out that while respondents' motion contained various other allegations of misfeasance and nonfeasance against city and county officials, respondents failed to present any evidence in support thereof. Nor have respondents chosen to argue these points on appeal; therefore, we will not consider this contention.

■■ Respondents asserted, in their motion to dismiss, that the fair market value of the real estate in question is greatly in excess of the amount of lien being asserted against it, and that this differential is good cause to dismiss the tax deed petition. Our supreme court has indicated however, that the difference between the value of the property and the amount of the tax lien is not a ground for denying or setting aside a tax deed or the underlying judgment and order of sale. See *Stanley v. Bank of Marion* (1961), 23 Ill. 2d 414, 178 N.E.2d 367.

On the basis of the foregoing analysis, we find that the trial court's order granting respondents' motion to strike and dismiss the petition for deed is against the manifest weight of the evidence.

■■ We now consider the trial court's holding that petitioner did not comply with sections 263 and 266 of the Revenue Act. The amended report of proceedings reveals that at the conclusion of the hearing on respondents' motion, petitioner's attorney requested permission to put on proof concerning petitioner's compliance with sections 263 and 266 of the Revenue Act. The trial court indicated that it wanted first to make a ruling on respondents' motion, then it would hear the proof. However, in the order granting respondents' motion to dismiss, the trial court also found that petitioner had failed to comply with sections 263 and 266, without petitioner being afforded the opportunity to present proof of compliance. In view of the above, it is a denial of due process and reversible error to deny petitioner the opportunity to present his proofs before reaching the decision that petitioner had failed to comply with the applicable sections. *Burket v. Reliance Bank & Trust Co.* (1937), 367 Ill. 196, 11 N.E.2d 6.

Finally, respondents moved, in the trial court, for leave to supplement the record on appeal with the transcript of proceedings of a hearing on a motion, subsequent to trial in this case, to introduce into evidence certain of respondents' exhibits which had been marked for identification purposes but never introduced into evidence; objections on behalf of the petitioner to the motion were filed and the trial court denied respondents' motion. At oral argument in this court, respondents orally moved for leave to introduce these exhibits as part of the record on appeal; oral objections were made to this motion by petitioner. All motions and objections were ordered taken with the case.

Concerning these motions, the trial court refused to grant respondents' motion and we see no reason to disturb its ruling. Nor did we in reaching a decision in this case find the lack of these exhibits

prejudicial or harmful to the respondents' case. Therefore both motions are denied.

For the foregoing reasons, we reverse the order of the trial court granting respondents' motion to strike and dismiss and remand this case for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

SEIDENFELD, P. J., and RECHENMACHER, J., concur.